IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

TODD C. MCCAIN and
CHRISTY MCCAIN,

    Plaintiffs,

v.

AURORA LOAN
SERVICES, LLC,
MORTGAGE
ELECTRONIC
REGISTRATION
SYSTEM, INC., AEGIS
WHOLESALE
CORPORATION, and
unknown defendants DOE
#1, DOE #2,

    Defendants.

CIVIL ACTION FILE NO.
4:09-CV-0217-HLM

## ORDER

This is an action filed under the Truth in Lending Act,

15 U.S.C.A. § 1601, et seq. ("TILA").  The case is before

the Court on Defendants' Motion for Judgment on the

AO 72A
(Rev.8/82)

Pleadings [8],[1] on Defendants' Motion for Sanctions [9], and on the Order and Final Report and Recommendation of United States Magistrate Judge Walter E. Johnson [25].[2]

---

[1]Defendants' brief in support of their Motion for Judgment on the Pleadings exceeds the twenty-five page limit established by the Local Rules, and Defendants did not obtain the Court's permission before filing the brief.  Defendants' brief thus technically violates Local Rule 7.1D.  N.D. Ga. R. 7.1D ("Absent prior permission of the court, briefs filed in support of a motion or in response to a motion are limited in length to twenty-five (25) pages.").  Similarly, Plaintiffs' response to Defendants' Motion for Sanctions and Defendants' Motion for Joinder both lack page numbers, which are required by the Local Rules.  N.D. Ga. R. 5.1E ("All pages shall be numbered consecutively at the bottom center of the page.")  The Court will accept the documents as filed, but cautions counsel that it expects counsel to comply with the Local Rules for all future documents filed in this Court.

[2]In the Order and Final Report and Recommendation, Judge Johnson granted Defendants' Motion for Joinder and denied Plaintiffs' Motion for Leave to Amend Complaint.  The Court concludes that Judge Johnson properly resolved those Motions.

AO 72A
(Rev.8/82)

## I.   Standard of Review for a Report and Recommendation

28 U.S.C.A. § 636(b)(1) requires that in reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C.A. § 636(b)(1).  The Court therefore must conduct a <u>de novo</u> review if a party files "a proper, specific objection" to a factual finding contained in the report and recommendation. <u>Macort v. Prem, Inc.</u>, 208 F. App'x 781, 784 (11th Cir. 2006); <u>Jeffrey S. by Ernest S. v. State Bd. of Educ.</u>, 896 F.2d 507, 513 (11th Cir. 1990); <u>United States v. Gaddy</u>, 894 F.2d 1307, 1315 (11th Cir. 1990); <u>LoConte v. Dugger</u>, 847 F.2d 745, 750 (11th Cir. 1988).  If no party files a timely

3

objection to a factual finding in the report and recommendation, the Court reviews that finding for clear error. <u>Macort</u>, 208 F. App'x at 784. Legal conclusions, of course, are subject to de novo review regardless of whether a party specifically objects. <u>United States v. Keel</u>, 164 F. App'x 958, 961 (11th Cir. 2006); <u>United States v. Warren</u>, 687 F.2d 347, 347 (11th Cir. 1982).

## II.   Background

### A.   Plaintiffs' Allegations[3]

#### 1.   The August 2004 Loan Transaction

In 2004, Plaintiff Todd C. McCain ("Mr. McCain") contacted Defendant Aegis Wholesale Corporation

---

[3]The Court has followed Judge Johnson's practice of taking the factual allegations contained in the Amended Complaint as true, and of considering the exhibits attached to the pleadings. (Order & Final Report & Recommendation at 3 n.4.)

4

("Defendant Aegis"), a lender, through one of its approved mortgage brokers, non-party Central Mortgage and Investments ("CMI"), to refinance an existing construction loan on Plaintiffs' property located at 62 Bob-O-Link, White, Georgia, 30184. (Am. Compl. ¶¶ 1, 17-18.) Together, Defendant Aegis and CMI were responsible for obtaining all of the loan qualifying paperwork, including a Verification of Deposit ("VOD") form verifying Mr. McCain's deposited funds. (Id. ¶¶ 19-20.) Based on the true and accurate information that Mr. McCain provided to CMI and Defendant Aegis, Mr. McCain was assured that he would qualify for the loan, which he obtained from Defendant Aegis on August 23, 2004. (Id. ¶¶ 1, 31.)[4]

---

[4]Defendant Mortgage Electronic Registration System, Inc. ("Defendant MERS") is the nominee, assignee, and grantee in the

Plaintiffs did not receive a Good Faith Estimate prior to the closing.  (Am. Compl. ¶ 33.)  At the closing, Plaintiffs received a TILA disclosure statement which reflected their interest rate and monthly payment of principal and interest, but did not reflect the payment for his financed Mortgage Insurance Premium ("MIP").  (Id. ¶¶ 34-35.)

In October 2005, the Georgia Department of Banking and Finance conducted an audit of CMI's loan files and subpoenaed Mr. McCain to appear before it on November 30, 2005.  (Am. Compl. ¶¶ 21, 24, Ex. 5 [22-8].)  The audit revealed that loan documentation in Mr. McCain's file may have been fraudulently altered.  (Id. ¶ 21.)  Specifically, the

---

August 23, 2004 transaction, and Defendant Aurora Loan Services, LLC ("Defendant Aurora") is the purported servicer of that loan. (Am. Compl. ¶¶ 3-4.)

AO 72A
(Rev.8/82)

auditors identified handwritten alterations to the VOD form that were inconsistent with the typed information on that document.  (Id. ¶ 22.)  Moreover, Mr. McCain did not sign either the original or the altered version of the VOD form. (Id. ¶ 23 & Ex. 3.)

While testifying during the Department of Banking and Finance hearing, Mr. McCain learned that the underwriting guidelines required Defendant Aegis to verify a certain period of "seasoning"[5] for the funds on deposit in his

_____

[5]As Judge Johnson noted:

"Seasoning" of funds without a documented source has been explained as follows:

> On loan programs where the assets of the borrower are verified, generally only the past two months of asset statements are required.  Therefore, any funds previously in the account would be considered the borrowers as they are "seasoned."  Any large

7

account, and that, without proper seasoning, Defendant Aegis would be unable to sell the loan and would deny approval. (Id. ¶¶ 28-29.) The handwritten portion of the VOD form indicated that Mr. McCain had an average checking account balance of $97,619 for the previous two months. (Id. Ex. 3.) Mr. McCain, however, did not at any time during the underwriting process represent to anyone that he had at least $90,000 in the depository account for any particular period of time. (Id. ¶ 30.) Defendants Aegis

---

deposits of "magic" money listed in the two months statements would need to have a satisfactory source proving that these deposits belong to the borrower and are not from a loan. These large deposits are "not seasoned".

See http://www.mtgmortgages.com/QandAseasoning.htm.

(Order & Final Report & Recommendation at 5 n.7.)

and MERS supervised the underwriting process, and should not have approved the loan, given the fraudulently altered and unsigned VOD.  (Id. ¶¶ 26-27.)

As a result of Mr. McCain's testimony regarding the falsified VOD form, the Georgia Department of Banking and Finance issued a notice of intent to revoke CMI's mortgage broker's license on April 17, 2006.  (Am. Compl. ¶ 25.)

## 2.   The Proposed Short Sale

In February 2009, Defendant Aurora, Defendant MERS, and Mr. McCain initiated short sale negotiations. (Am. Compl. ¶ 37.) On March 21, 2009, Defendants Aurora and MERS agreed that Mr. McCain had submitted a complete short sale package, including the required financial documents and a sales contract from an arms-

9

length purchaser for an acceptable price.  (Id. ¶¶ 38-39.)

After reviewing the short sale package, Elizabeth Santoro

of Defendant Aurora informed Mr. McCain that, to stop the

foreclosure sale scheduled for July 7, 2009, and to approve

the short sale, Defendant Aurora required a sales contract

price that would net $390,000 to Defendant Aurora at

closing.  (Id. ¶ 41.)  The prospective purchaser agreed to

raise the sale price to $409,000, which would net Defendant

Aurora $390,000 at closing.   (Id. ¶ 42.)   In response,

Defendant Aurora stopped the scheduled foreclosure sale

and informed Mr. McCain that the short sale was approved

and that an approval letter would be forthcoming.  (Id. ¶ 43.)

When the anticipated approval letter did not arrive, Mr.

McCain inquired further and learned that the broker price

10

opinion ("BPO") was more than ninety days old and that a new BPO would be required. (Am. Compl. ¶ 44.) After receiving the second BPO, Defendant Aurora determined that a full appraisal was necessary. (Id. ¶ 46.) The appraisal valued the property at $500,000, and Defendant Aurora informed Mr. McCain that it required a sale price of $500,000 to approve the short sale. (Id. ¶¶ 47-48.) On October 13, 2009, the prospective purchaser agreed to Defendant Aurora's price, and Mr. McCain again anticipated receipt of an approval letter. (Id. ¶¶ 49-51.)

On November 1, 2009, Defendant Aurora requested additional financial information, which Mr. McCain provided. (Am. Compl. ¶¶ 52-53.) After initially claiming to have lost the information, Defendant Aurora agreed in the latter part

11

of November 2009 that it had all the requested information and documents. (Id. ¶¶ 53-54.) Nevertheless, on November 27, 2009, Ms. Santoro notified Mr. McCain by e-mail that the short sale would be denied and that the foreclosure sale would proceed as scheduled on December 1, 2009. (Id. ¶ 55 & Ex. 8.) That e-mail stated that Defendant Aurora had "determined that this offer is not an arms length transaction." (Id. Ex. 8 at 15.)

**B.   Procedural Background**

On November 30, 2009, Mr. McCain initiated this action in the Superior Court of Bartow County, Georgia. On December 31, 2009, Defendants removed the case to this Court. (Docket Entry No. 1.)

12

On February 8, 2010, Defendants filed a Motion for Judgment on the Pleadings, as well as a Motion for Sanctions.  (Docket Entry Nos. 8-9.)  On March 11, 2010, Judge Johnson issued his Order and Final Report and Recommendation, in which he recommended that the Court grant Defendants' Motion for Judgment on the Pleadings, but deny Defendants' Motion for Sanctions.  (Docket Entry No. 25.)  Judge Johnson granted Defendants' Motion for Joinder, and directed the Clerk to add Christy McCain ("Mrs. McCain") as a party to the case.  (Id.)

As of the date of this Order, the Clerk's docket indicates that no party has filed Objections to the Order and Final Report and Recommendation.  The time period for

13

filing Objections has expired, and the Court therefore concludes that this matter is ripe for resolution by the Court.

## III.   Motion for Judgment on the Pleadings

### A.   Applicable Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides for motions for judgment on the pleadings. Fed. R. Civ. P. 12(c). When considering a motion for judgment on the pleadings, the Court applies the same standard as the Court applies to a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). <u>Roma Outdoor Creations, Inc. v. City of Cumming, Ga.</u>, 558 F. Supp. 2d 1283, 1285 (N.D. Ga. 2008).

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint, or portions of a complaint, for

14

"failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6).   When reviewing a motion to

dismiss, the Court must take the allegations of the

complaint as true, and must construe those allegations in

the light most favorable to the plaintiff.   Rivell v. Private

Health Care Sys., Inc., 520 F.3d 1308, 1309 (11th Cir.

2008). "However, the complaint's '[f]actual allegations must

be enough to raise a right to relief above the speculative

level.'"   Id. (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct.

1955, 1965 (2007)) (alteration in original).   The United

States Court of Appeals for the Eleventh Circuit has

observed:

> The Supreme Court's most recent formulation of
> the pleading specificity standard is that "stating
> such a claim requires a complaint with enough
> factual matter (taken as true) to suggest" the

required element.   The standard is one of "plausible grounds to infer."   The Court has instructed us that the rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  It is sufficient if the complaint succeeds in "identifying facts that are suggestive enough to render [the element] plausible."

<u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1295-96 (11th Cir. 2007).

**B.   Discussion**

Mr. McCain's original Complaint included the following counts: "TILA Rescission" (Count 1), "TILA Disclosure Claims in Recoupment Material to Rescission" (Count 2), "Fraud and Fraud in the Inducement" (Count 3), "Unfair and Deceptive Business Practices" (Count 4), "Georgia Residential Mortgage Violations" (Count 5), "Interlocutory

16

Injunctive Relief" (Count 6), and "Punitive Damages" (Count 7).[6]  Judge Johnson correctly noted that Plaintiffs' response to Defendant's Motion for Judgment on the Pleadings did not address Defendants' arguments with respect to Counts 4 and 5 of the original Complaint.  (Order & Final Report & Recommendation at 10.)  Judge Johnson properly deemed those claims--specifically, Plaintiffs' claims for unfair and deceptive business practices and violations of the Georgia Residential Mortgage Act--abandoned.  (Id. at 10-11.)[7]

---

[6]As Judge Johnson observed, a claim for "[p]unitive damages is not a separate cause of action under Georgia law."  (Order & Final Report & Recommendation at 10 n.9.)

[7]As Judge Johnson noted, Plaintiffs did not include those claims in the proposed Amended Complaint.  (Order & Final Report & Recommendation at 11 n.10.)  Judge Johnson also properly concluded that, to the extent that Plaintiffs intended to assert other causes of action, including violations of the Real Estate Settlement Procedures Act ("RESPA"), and claims against unknown Defendants, Plaintiffs had abandoned those claims.  (Id.)

As Judge Johnson noted, both the Complaint and the proposed Amended Complaint include allegations of fraud and TILA violations, and the proposed Amended Complaint adds a cause of action for breach of contract.[8]   (Order & Final Report & Recommendation at 11.)  Because granting the Motion for Leave to Amend Complaint would necessarily moot the Motion for Judgment on the Pleadings, Judge Johnson properly considered whether the amendment was proper before discussing Plaintiff's individual claims.

---

[8]Judge Johnson also observed that the proposed Amended Complaint included a Count VIII titled "MERS is not the Proper Party in Interest to Foreclose," although Plaintiffs failed to set forth that claim as a cognizable cause of action.  (Order & Final Report & Recommendation at 11 n.11.)

18

## 1.    Motion for Leave to Amend Complaint

The decision whether to grant leave to amend a pleading is committed to the sound discretion of the trial court.  Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1276 (11th Cir. 2008).   However, Federal Rule of Civil Procedure 15(a)(2), which provides that "the court should freely give leave [to amend] when justice so requires," drastically circumscribes the court's discretion to deny a motion to amend.  Fed. R. Civ. P. 15(a)(2); Fla. Evergreen Foliage v. E.I. DuPont de Nemours & Co., 470 F.3d 1036, 1041 (11th Cir. 2006) (per curiam).  A court thus may deny a motion to amend only if certain circumstances exist, including: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments

previously allowed; (4) undue prejudice to the opposing party; or (5) futility of the amendment.  <u>Corsello v. Lincare, Inc.</u>, 428 F.3d 1008, 1014 (11th Cir. 2005).

Here, Defendants argued that the proposed amendment was futile.  "'[A] proposed amendment is futile when the allegations of the proffered complaint would be unable to withstand a motion to dismiss.'"  <u>Bowers v. Am. Heart Ass'n., Inc.</u>, 513 F. Supp. 2d 1364, 1369 (N.D. Ga. 2007) (quoting <u>Amick v. BM & KM, Inc.</u>, 275 F. Supp. 2d 1378, 1381 (N.D. Ga. 2003)) (alteration in original).  For the reasons discussed <u>infra</u> Part III.B.2., Judge Johnson correctly concluded that Plaintiffs' proposed TILA and fraud claims, as well as Plaintiffs' proposed breach of contract claim, failed as a matter of law.  (Order & Final Report &

20

Recommendation at 13.)  Because those claims failed as a matter of law, the proposed amendments set forth in Plaintiffs' proposed Amended Complaint were futile, and Judge Johnson properly denied Plaintiffs' Motion for Leave to Amend Complaint.  (Id.)

### 2.    Motion for Judgment on the Pleadings

### a.    TILA Claims

Both Plaintiffs' Complaint and the proposed Amended Complaint seek rescission and monetary damages for alleged TILA violations in conjunction with Plaintiffs' August 2004 loan transaction.  (Compl. ¶¶ 71-82, Prayer for Relief; Am. Compl. ¶¶ 102-118.)   The TILA, however, imposes statutory time limits for both rescission and damages claims.  15 U.S.C. §§ 1635, 1640.

AO 72A
(Rev.8/82)

With respect to rescission claims, the TILA provides that a debtor "shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later." 15 U.S.C.A. § 1635(a). If a creditor fails to comply with its obligations under the TILA, the debtor's right to rescind the transaction is extended from three days to three years. Smith v. Highland Bank, 108 F.3d 1325, 1326 (11th Cir. 1997) (citing 12 C.F.R. § 226.23(a)(3)). The right to rescind, however, is not subject to equitable tolling. 15 U.S.C.A. § 1635(f); Beach v. Ocwen Fed. Bank, 523 U.S.

22

410, 412 (1998) (holding that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period."). Consequently, Plaintiffs' right to rescind the transaction expired no later than August 23, 2007, three years after the date of the loan at issue. Because Plaintiffs filed this lawsuit seeking rescission of the loan after August 23, 2007, their TILA claim for rescission fails as a matter of law.

With respect to damages under the TILA, a creditor that fails to comply with the TILA may face civil liability, including an obligation to pay the debtor's costs and attorney's fees. 15 U.S.C.A. § 1640(a). An action for damages is timely if it is filed "within one year from the date of the occurrence of the violation." Id. § 1640(e). "The

violation 'occurs' when the transaction is consummated." In re Smith, 737 F.2d 1549, 1552 (11th Cir. 1984).

The TILA's one-year statute of limitations for damages claims is subject to equitable tolling. Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 708 (11th Cir. 1998). "Where equitable tolling applies, plaintiffs may sue after the statutory period has expired if they have been prevented by inequitable circumstances from doing so previously." Williams v. Saxon Mortg. Servs., Inc., No. Civ. A. 06-0799-WS-B, 2007 WL 2828752, at *3 (S.D. Ala. Sept. 27, 2007). "[A] TILA plaintiff who attempts to avail himself of equitable tolling must establish some fraudulent conduct or concealment other than the mere nondisclosure in the loan

24

documents that constitutes the TILA violation itself." Id. at *4.

Mr. McCain alleges that he discovered the TILA violations when he had a forensic audit of his mortgage performed in November 2009. (Compl. ¶ 46; Am. Compl. ¶ 36.)   He further contends that he "exercised his due diligence in reviewing the closing documents [but] the TILA violations were not recognizable from the face of the document." (Am. Compl. ¶ 105.) Judge Johnson correctly observed, however, that Mr. McCain "alleges no facts in support of his due diligence conclusion, and neither the Complaint nor the proposed Amended Complaint alleges conduct by any defendant 'designed to conceal evidence of alleged wrongdoing, other than the underlying wrongdoing

25

itself.'" (Order & Final Report & Recommendation at 15 (quoting <u>Williams</u>, 2007 WL 2828752, at *5.)   Judge Johnson correctly concluded that, as a matter of law, Plaintiffs' allegations were insufficient to support equitable tolling. (<u>Id.</u> (collecting cases).) Under those circumstances, Plaintiffs' TILA claim seeking damages also is time-barred.

For the reasons discussed above, Judge Johnson properly found that the statute of limitations barred Plaintiffs' TILA claims for rescission and damages.  Judge Johnson therefore correctly recommended that the Court grant Defendants' Motion for Judgment on the Pleadings as to Plaintiffs' TILA claims, as set forth in Counts 1 and 2 of Plaintiffs' Complaint and Amended Complaint.  The Court consequently adopts this portion of the Order and Final

AO 72A
(Rev.8/82)

Report and Recommendation, and grants Defendants' Motion for Judgment on the Pleadings as to Counts 1 and 2 of Plaintiffs' Complaint and Amended Complaint.

### b.   Fraud Claims

Plaintiffs' Complaint and Amended Complaint also contain claims for fraud and fraud in the inducement.   A plaintiff asserting such claims must prove the following five elements: "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damages." <u>Lehman v. Keller</u>, 297 Ga. App. 371, 372-73, 677 S.E.2d 415, 417 (2009).   Federal Rule of Civil Procedure 9(b) also provides: "In alleging fraud or mistake, a party must state with particularity the

27

circumstance constituting fraud or mistake." Fed. R. Civ. P.

9(b).  The United States Court of Appeals for the Eleventh

Circuit has observed:

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th

Cir. 2001) (quoting Brooks v. Blue Cross & Blue Shield of

Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997)).

"Essentially, Rule 9(b) requires plaintiffs in a fraud case to

specify the who, what, where, when, why, and how of the

28

alleged fraud."  WESI, LLC v. Compass Envtl., Inc., 509 F.

Supp. 2d 1353, 1358 (N.D. Ga. 2007).

Judge Johnson correctly concluded that both the

original Complaint and the proposed Amended Complaint

failed to plead fraud adequately.  (Order & Final Report &

Recommendation at 17.)  As Judge Johnson observed,

Plaintiffs failed "to describe precisely what statements were

made, or dates of any alleged representations." (Id.) Judge

Johnson also properly found that misrepresentations

concerning the nature of the loan and Plaintiffs' ability to

qualify for the loan, as a matter of law, were not material.

(Id. at 17-18 (collecting cases).) Further,

"misrepresentations . . . regarding the nature of the loan and

[plaintiff's] ability to qualify for the loan" (Am. Compl. ¶ 72)

are not material as a matter of law.   Judge Johnson

therefore properly found that Plaintiffs failed to establish the

first element of their fraud and fraudulent inducement

claims.[9]

Judge Johnson also correctly concluded that Plaintiffs

failed to allege that they reasonably relied on the alleged

misrepresentations or omissions.  (Order & Final Report &

Recommendation at 18-19.)  The Georgia Court of Appeals

has observed:

------

[9]As Judge Johnson noted, although Plaintiffs contend that the altered VOD form was a material misrepresentation, it is not clear how Plaintiffs could have relied on that form, how any such reliance could have been reasonable, or how Plaintiffs suffered damage by obtaining the loan that they sought.   Indeed, it appears that Defendant Aegis relied on the altered VOD form in agreeing to make the loan to Plaintiffs, thereby benefitting Plaintiffs, as the parties attempting to obtain the loan.  (Order & Final Report & Recommendation at 18 n.13.)

30

> [A] party to a contract who can read, must read or show a legal excuse for not doing so, and ordinarily if fraud is an excuse, it must be such fraud as would prevent the party from reading the contract. One cannot claim to be defrauded about a matter equally open to the observation of all parties where no special relationship or trust or confidence exists. Further, in the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations, failure to do which will bar an action based on fraud. One not prevented from reading the contract, and having the capacity and opportunity to do so, cannot after signing it claim he was fraudulently induced to sign by promises which contradict the express terms of the contract.

Results Oriented, Inc. v. Crawford, 245 Ga. App. 432, 438-39, 538 S.E.2d 73, 79 (2000) (citations and internal punctuation omitted), aff'd, 273 Ga. 884, 548 S.E.2d 342 (2001).

31

Judge Johnson observed that, based on the e-mails attached as exhibits to the Complaint and proposed Amended Complaint, Mr. McCain is a member of the State Bar of Georgia and apparently practices as a real estate attorney. (Order & Final Report & Recommendation at 19 & n.14.) Plaintiffs have not alleged that they lacked legal capacity, that they were prevented from reading the documents, or that they otherwise exercised any reasonable care before entering into the contracts. Judge Johnson therefore properly found that Plaintiffs' allegations did not relieve them from their duty of diligence. (Id. at 19 (collecting cases).) Plaintiffs consequently failed to allege that they reasonably relied on the alleged misrepresentations or omissions.

32

Judge Johnson also correctly concluded that the four-year statute of limitations barred Plaintiffs' claims for fraud and fraudulent inducement.   (Order & Final Report & Recommendation at 20 (citing O.C.G.A. § 9-3-31; <u>Willis v. City of Atlanta</u>, 265 Ga. App. 640, 643, 595 S.E.2d 339, 343 (2004).)  "A claim of fraudulent inducement in the execution of a contract accrues on the date of the execution of the contract."  <u>Kerce v. Bent Tree Corp.</u>, 166 Ga. App. 728, 729, 305 S.E.2d 462, 462 (1983) (citation omitted).  Judge Johnson correctly noted that, although the statute of limitations may be tolled, Plaintiffs failed to establish that tolling applies here.  (Order & Final Report & Recommendation at 20.)[10]  Moreover, as Judge Johnson

---

[10]Judge Johnson properly rejected Plaintiffs' contention that "because this case involves the conveyance of a security deed

33

observed, "[a] limitation period is tolled only 'until the plaintiff discovers or in the exercise of reasonable diligence should have discovered the fraud.'" (Id. (quoting <u>Coffee v. Gen. Motors Acceptance Corp.</u>, 30 F. Supp. 2d 1376, 1381 (S.D. Ga. 1998).)   Judge Johnson concluded that, Plaintiffs should have discovered the alleged fraud after reviewing the loan documents in August 2004.   (Id.) Under those circumstances, the limitations period began to run in August 2004, and expired before Plaintiffs filed this lawsuit.  Judge Johnson therefore properly concluded that the statute of limitations barred Plaintiffs' fraud claims.  (Id.)

---

procured upon fraud ([i.e.,] the altered VOD), the applicable statue [sic] of limitations is seven (7) years."  (Order & Final Report & Recommendation at 20 n.15.)

For the reasons discussed above, the Court agrees with Judge Johnson that the claims for fraud and fraudulent inducement contained in Count 3 of Plaintiffs' Complaint and Amended Complaint fail as a matter of law. Under those circumstances, Judge Johnson properly recommended that the Court grant Defendants' Motion for Judgment on the Pleadings as to those claims. The Court therefore adopts this portion of the Order and Final Report and Recommendation, and grants Defendants' Motion for Judgment on the Pleadings as to Count 3 of Plaintiffs' Complaint and proposed Amended Complaint.

### c.   Breach of Contract Claim

Plaintiffs contend that they "entered into a short sale contract with [Defendant] Aurora as agent for [Defendant]

AO 72A
(Rev.8/82)

MERS," and that Defendant Aurora breached that contract. (Am. Compl. ¶¶ 91, 93.)   For the following reasons, the Court finds that Judge Johnson properly concluded that this breach of contract claim fails as a matter of law.

"A valid contract requires 'parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate.'" King v. Comfort Living, Inc., 287 Ga. App. 337, 339, 651 S.E.2d 484, 487 (2007) (quoting O.C.G.A. § 13-3-1). "If the parties have not agreed to an essential term, 'no meeting of the minds of the parties exists, and a valid and binding contract has not been formed.'"   Id. (quoting Jerry Dickerson Presents, Inc. v. Concert/Southern Chastain Promotions, 260 Ga. App. 316,

328, 579 S.E.2d 761 (2003)).  "Every essential element of a contract for the sale of land must be in writing to satisfy the statute of frauds."  <u>Engram v. Engram</u>, 265 Ga. 804, 805 463 S.E.2d 12, 14 (1995) (citing O.C.G.A. § 13-5-30(4));  <u>see also</u>  <u>McClung v. Atlanta Real Estate Acquisitions, LLC</u>, 282 Ga. App. 759, 762, 639 S.E.2d 331, 334 (2006) (observing that contract for sale of land "'must describe the property to be sold with the same degree of certainty as that required in a deed conveying realty'") (quoting <u>Bulloch South, Inc. v. Gosai</u>, 250 Ga. App. 170, 172, 550 S.E.2d 750 (2001)).[11]

---

[11]O.C.G.A. § 23-2-131(b) contains an equitable exception to the statute of frauds, which"provides for specific performance of a parol contract for the sale of realty where there has been partial payment accompanied with possession, or possession alone with valuable improvements, if clearly proved . . . to have been done with reference to the parol contract." <u>Engram</u>, 265 Ga. at 805, 463

AO 72A
(Rev.8/82)

Judge Johnson correctly observed that the proposed Amended Complaint failed to allege that any final agreement signed by Defendant Aurora existed pertaining to the sale of Plaintiffs' property.  (Order & Final Report & Recommendation at 22.)   Judge Johnson also correctly noted that Plaintiffs' own allegations belie their conclusion that a contract existed, and that the series of e-mails between Mr. McCain and representatives of Defendant Aurora attached to the proposed Amended Complaint simply demonstrated Mr. McCain's "continuing unease about the lack of a final agreement," rather than "manifesting the existence of a contract." (Id. at 22-23.)  As

_____

S.E.2d at 12 (omission in original).   Judge Johnson correctly concluded that this exception simply does not apply to the circumstances of this case.   (Order & Final Report & Recommendation at 22 n.16.)

38

Judge Johnson observed, the Court need not accept Plaintiffs' legal conclusion asserting that a contract existed "[w]here the pleadings make clear that no contract was ever formed."  (Id. at 23.)  Under those circumstances, Judge Johnson properly found that Plaintiffs' proposed Amended Complaint failed to set forth a viable breach of contract claim.  (Id.)

For the reasons discussed above, Judge Johnson correctly concluded that the breach of contract claim set forth in Plaintiffs' proposed Amended Complaint fails as a matter of law.  The Court therefore adopts this portion of the Order and Final Report and Recommendation, and grants Defendants' Motion for Judgment on the Pleadings with respect to that claim.

39

### 3.   Summary

In sum, the Court concludes that the TILA, fraud, and breach of contract claims set forth in Plaintiffs' proposed Amended Complaint fail as a matter of law.   Plaintiffs' proposed Amended Complaint consequently is futile, and Judge Johnson properly denied Plaintiffs' Motion for Leave to Amend on that ground.   Moreover, the TILA and fraud claims contained in Plaintiffs' Complaint also fail as a matter of law, and Plaintiffs have abandoned the remaining claims contained in their Complaint.   Under those circumstances, Judge Johnson properly recommended that the Court grant Defendants' Motion for Judgment on the Pleadings as to all of Plaintiffs' Claims.   The Court therefore adopts this portion of the Order and Final Report and Recommendation, and

40

grants Defendants' Motion for Judgment on the Pleadings as to all of Plaintiffs' claims.

## IV.  Motion for Sanctions

Defendants also filed a Motion for Sanctions, in which they requested that the Court impose sanctions against Mr. McCain and his counsel under Federal Rule of Civil Procedure 11 and 28 U.S.C.A. § 1927.[12]   Judge Johnson recommended that the Court deny the Motion for Sanctions under both Rule 11 and § 1927.  For the following reasons, the Court agrees with Judge Johnson's recommendation.

As an initial matter, Judge Johnson correctly concluded that the Motion for Sanctions failed under Rule 11.  (Order & Final Report & Recommendation at 24.)   As Judge

_____

[12]Defendants do not seek sanctions against Mrs. McCain.

41

Johnson noted, Rule 11 requires a party seeking sanctions under that Rule to serve the opposing party with a copy of the proposed motion for sanctions, and to refrain from filing that motion with the court unless the opposing party fails to withdraw or correct the offending filing within twenty-one days after service of the motion.  Fed. R. Civ. P. 11(c)(2). A party that fails to comply with that requirement, known as the "safe harbor provision," cannot obtain Rule 11 sanctions.  Macort v. Prem, Inc., 208 F. App'x 781, 786 (11th Cir. 2006); Erickson's Flooring & Supply Co., Inc. v. Tembec, Inc., No. 03-74214, 2007 WL 1009501, at *3 (E.D. Mich. Mar. 29, 2007) ("Compliance with the safe harbor provision under Rule 11 is an absolute requirement.").

42

Here, Defendants failed to comply with Rule 11's safe harbor provision.  As Judge Johnson noted:

> Defendants provide no evidence that they served [P]laintiff with a formal motion.  Rather, [D]efendants' counsel avers that he "corresponded with Plaintiff's counsel," and submits a copy of an email sent to [P]laintiff and his counsel.  (See Olson Aff. ¶ 11, Ex. A.)  That email is in the form of a letter "intended to notify [plaintiff and his counsel] of this directly adverse authority and to request that [they] dismiss the Complaint . . . ." (Id. Ex. A.)

(Order & Final Report & Recommendation at 24.) Defendants, however, failed to demonstrate that they complied with the safe harbor provision by serving Mr. McCain and his counsel with a copy of the actual Motion for Sanctions.   Under those circumstances, Judge Johnson correctly concluded that Defendants may not obtain sanctions under Rule 11.  (Id.)

43

Defendants also seek sanctions against Plaintiffs' counsel under 28 U.S.C.A. § 1927.  That statute provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C.A. § 1927.   The United States Court of Appeals for the Eleventh Circuit has observed:

> As the plain statutory language makes clear, § 1927 is not a "catch-all" provision for sanctioning objectionable conduct by counsel.  Under the plain language of the statute, three essential requirements must be satisfied with respect to an award of sanctions under § 1927.  First, the attorney must engage in "unreasonable and vexatious" conduct.  Second, that "unreasonable

44

and vexatious" conduct must be conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Peterson v. BMI Refractories, 124 F.3d 1386, 1396 (11th Cir. 1997). "Under the plain statutory language, objectionable conduct – even 'unreasonable and vexatious' conduct– is not sanctionable unless it results in proceedings that would not have been conducted otherwise." Id. at 1397; see also Macort, 208 F. App'x at 786 (observing that section 1927 "only applies to unnecessary filings after the lawsuit has begun"). Further, "[f]or sanctions under section 1927 to be appropriate, something more than a lack of merit is required. The statute was designed to sanction attorneys

45

who willfully abuse the judicial process by conduct tantamount to bad faith." Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003) (internal quotation marks and citation omitted).

Judge Johnson correctly concluded that § 1927 simply did not apply to Plaintiffs' Complaint, because it was the initial pleading. (Order & Final Report & Recommendation.) Judge Johnson also properly found that the proposed Amended Complaint did not demonstrate that Mr. McCain or his counsel had "willfully abused the judicial process by conduct tantamount to bad faith." (Id.) Under those circumstances, Judge Johnson correctly concluded that sanctions were not available to Defendants under § 1927. (Id.)

46

For the reasons discussed above, Judge Johnson correctly found that Defendants were not entitled to sanctions under either Rule 11 or § 1927. Judge Johnson consequently properly recommended that the Court deny Defendants' Motion for Sanctions. The Court therefore adopts this portion of the Order and Final Report and Recommendation, and denies Defendants' Motion for Sanctions.

## V. Conclusion

ACCORDINGLY, the Court **ADOPTS** the Order and Final Report and Recommendation of United States Magistrate Judge Walter E. Johnson [25], **GRANTS** Defendants' Motion for Judgment on the Pleadings [8], and **DENIES** Defendants' Motion for Sanctions [9]. The Court

47

**DISMISSES** this action, and **DIRECTS** the Clerk to **CLOSE** this case.

IT IS SO ORDERED, this the 1 2 day of April, 2010.

_____

UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)